```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


                                    )
MARIA LUCIA TAYAG,                  )
               Plaintiff,           )
                                    )
          v.                        )  CIVIL ACTION NO. 08-10727-PBS
                                    )
LAHEY CLINIC HOSPITAL, INC.,        )
               Defendant.           )
                                    )
```

### MEMORANDUM AND ORDER

January 6, 2010

Saris, U.S.D.J.

## I.  INTRODUCTION

Plaintiff Maria Lucia Tayag, a sixty year-old woman of Filipino descent, brings this action against her former employer, Defendant Lahey Clinic Hospital ("Lahey"), alleging that her termination violates the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Mass. Gen. Laws ch. 151B, and the employment contract.  Defendant moves for summary judgment with respect to all counts, arguing, among other things, that Plaintiff's seven-week trip to the Philippines to participate in a faith healing event with her ill husband is not protected leave under the FMLA.  Plaintiff moves for partial summary judgment on the ground that she provided adequate medical certification on numerous occasions that she needed FMLA leave

for a qualifying reason to care for her husband who had numerous and chronic health conditions.

After a hearing and a review of the record, Lahey's motion for summary judgment on all counts is **ALLOWED**.  Plaintiff's motion for partial summary judgment is **DENIED**.

## II.   BACKGROUND

When all reasonable inferences are drawn in favor of the non-moving party, the record contains the following facts which, unless noted, are undisputed.

### A.   Background

Plaintiff began working as a Health Information Clerk in Lahey's Health Information Management Department in February 2002.  She consistently received positive performance reviews.  For the entire duration of Plaintiff's employment at Lahey, Plaintiff's husband, Rhomeo Tayag, suffered from numerous serious chronic medical conditions including severe recurrent gout, kidney disease, rheumatoid arthritis, and end-stage renal failure.  He receives a disability pension from the MBTA and Social Security disability payments.  Both Plaintiff and her husband are originally from the Philippines, and both are practicing Roman Catholics.

Lahey maintained a Family and Medical Leave Policy that allowed eligible employees to take up to twelve weeks of leave to care for family members with serious health conditions.  (Lewis

Aff. Ex. B.)  Lahey may require "medical recertifications during a leave at no less than thirty (30) day intervals." (Id.)  The policy provides: "In instances where leave is foreseeable, colleagues must provide thirty (30) days advance notice of the leave request." (Id.)  "[A] medical certification form supporting the need for the leave must be submitted to Human Resources prior to the start of the leave, if the leave is foreseeable or within fifteen days of the start of the leave if it is not foreseeable." (Id.)  Additional certifications may be required. (Id.)  FMLA leave is "granted subject to a valid certification form being provided." (Id.)

Plaintiff routinely requested intermittent FMLA leave, typically for one to two days at a time, in order to take Mr. Tayag to doctor's appointments or to help him with household activities when he had bad days.  In order to recertify her need for intermittent leave to care for her husband, Plaintiff submitted a new medical certification form dated June 13, 2006.  The recertification was approved.  Until the incident in question, Lahey always approved Plaintiff's requests for intermittent FMLA leave.

### B. Request for Leave

In June 2006, Plaintiff asked her direct supervisor, Janice Treske, to approve her request for seven weeks of vacation time off, from August 7 to September 22, 2006.  Plaintiff's supervisor

informed Plaintiff that she could not take that time off.  When Plaintiff responded that she needed the time off because her husband was going to have hip and eye surgery, her supervisor suggested that she speak with Lahey's FMLA administrator, Susan Olsen.  Lahey's employees believed that Tayag was seeking time off to care for her husband in the aftermath of his surgery.

On July 8, 2006, Plaintiff informed Ms. Olsen that she needed to take seven weeks off to care for her husband, who was recovering from a recent cardiac angioplasty procedure.  The requested leave was to begin on August 7, 2006, and was to end on September 25, 2006.  Ms. Olsen informed Plaintiff that she needed to obtain a new FMLA medical certification from her husband's cardiologist supporting the need for leave.  Plaintiff provided Ms. Olsen with a copy of a medical record documenting Mr. Tayag's angioplasty.  Ms. Olsen informed Plaintiff that this medical record was not sufficient and that she needed additional certification from Mr. Tayag's cardiologist.  On August 2, 2006, Plaintiff gave Lahey a note from Mr. Tayag's primary care physician, Dr. Dong, an internist, stating that Mr. Tayag's medical problems "significantly affect his functional capacity to do activities of daily living and that his wife should be given leave" for medical reasons to "accompany Mr. Tayag on any trips as he needs physical assistance on a regular basis."  (Noone Aff. Ex. K.)  The letter indicated that Mr. Tayag had chronic liver and kidney problems.  (Id.)  Dr. Dong also submitted a medical

certification form on or around August 4, 2006, two days before she was to leave. Ms. Olsen instructed Plaintiff to obtain an additional medical certification from Dr. Ali, who performed Mr. Tayag's angioplasty. Olsen informed Plaintiff that her forms were inadequate and that Lahey would analyze her request for seven weeks off only after receiving Dr. Ali's certification.

On Friday, August 4, 2006, both Susan Olsen and Theresa Pirie, another of Plaintiff's supervisors, informed Plaintiff that Lahey lacked the information necessary to evaluate her request for FMLA leave. Nevertheless, on Monday, August 7, Plaintiff left a voice message for Ms. Pirie, stating that she was not coming to work. On August 8, Plaintiff talked to Olsen and said she did not come to work that day because her husband needed her and further stated that she had filed all of her paperwork three times and had given Olsen the record of her husband's operation. (Olsen Aff. ¶ 12.) Later that day, the Tayags left for the Philippines, where they remained until September 22, 2006. There is no evidence that Plaintiff ever told any supervisor at Lahey that she was going to the Philippines with her husband to participate in faith-healing activities. Lahey did not know she had gone to the Philippines at all.

### C. <u>Termination</u>

While the Tayags were in the Philippines, Dr. Ali submitted a medical certification form to Lahey stating that Plaintiff did not need to take FMLA leave to care for her husband.  Ms. Olsen therefore sent Plaintiff letters on August 10 and August 14, informing her that Lahey did not approve her leave because her husband's condition did not meet the standard of a "serious health condition" and asking Plaintiff to contact Lahey to discuss the situation.  Lahey representatives also left telephone messages for Plaintiff at her home.  When Plaintiff did not respond, Ms. Pirie sent her a letter dated August 18, 2006, informing Plaintiff that her employment was terminated because her leave was not approved.

### D. <u>Faith-Healing in the Philippines</u>

In the Philippines, the Tayags spent three and a half weeks attending a "Pilgrimage of Healing Ministry" at St. Bartholomew Parish, a Roman Catholic church in Catbalogan, Samar Province. Mr. Tayag stated that he is "a believer of the faith healing," and the priest at St. Bartholomew was renowned for his "miraculous healing" abilities.  At no point during the entire trip did Mr. Tayag receive medical treatment or visit a health care professional.  Aside from attending St. Bartholomew, the Tayags visited friends, family, and other churches.  Of the forty-seven days spent in the Philippines, nineteen of them –

just over forty percent – were spent away from St. Bartholomew Parish and with family and friends.

Because of his serious ailments, Mr. Tayag cannot travel without his wife.  She carries his bags, pushes his wheelchair, provides psychological support and gives him medication.

### III.  DISCUSSION

#### A.  Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Barbour v. Dynamics Research Corp., 63 F.3d 32, 36-37 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).  To succeed on a motion for summary judgment, "the moving party must show that there is an absence of evidence to support the nonmoving party's position."  Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has made such a showing, the burden shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party "may not rest on mere allegations or denials of his pleading, but must set forth

specific facts showing there is a genuine issue for trial." <u>Barbour</u>, 63 F.3d at 37 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).  The non-moving party must establish that there is "sufficient evidence favoring [its position] for a jury to return a verdict [in its favor].  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  <u>Anderson</u>, 477 U.S. at 249-50 (internal citations omitted).  The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  <u>Barbour</u>, 63 F.3d at 36 (citation omitted).

**B.  <u>FMLA Claim</u>**

Plaintiff alleges that Lahey unlawfully interfered with her rights under the FMLA and unlawfully retaliated against her for engaging in activities protected by the FMLA.  Congress enacted the FMLA in part to "entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition."  29 U.S.C. § 2601(b)(2).  Eligible employees can take up to twelve workweeks of leave during any 12-month period for several reasons including "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C).  The twelve-week leave can be used in

one block or may be taken intermittently.  See 29 U.S.C. § 2612(b); 29 C.F.R. § 825.220.

The parties do not dispute that Plaintiff's spouse, Mr. Tayag, suffers from a serious health condition.  Rather, they focus on whether Plaintiff's need to care for her husband during the seven-week trip to the Philippines merits FMLA protection.  At the time of the Tayags' trip, the Department of Labor regulations defined the phrase "needed to care for" as follows:

> The medical certification provision that an employee is "needed to care for" a family member encompasses both physical and psychological care.  It includes situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor, etc.  The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse or parent with a serious health condition who is receiving inpatient or home care.

60 Fed. Reg. 2180, 2245 (Jan. 6, 1995) (codified at 29 C.F.R. § 825.116) (amended Jan. 19, 2009).  Under the regulations, "intermittent or reduced schedule leave may be taken for absences where the employee or family member is incapacitated . . . because of a chronic serous health condition even if he or she does not receive treatment by a health care provider."  60 Fed. Reg. at 2247 (codified at 29 C.F.R. § 825.203) (amended Jan. 16, 2009).  "Intermittent leave" is defined as "FMLA leave taken in separate blocks of time due to a single qualifying reason."  Id.

Both parties point to legislative history surrounding the

enactment of the FMLA to buttress their positions. The Senate Report to the final version of the bill states[1]:

> Section 102(a)(1)(C) allows an eligible employee to take leave to care for a parent, spouse, son or daughter who has a serious health condition. Under this provision, <u>an employee could take leave to care for a parent or spouse of any age who, because of a serious mental or physical condition, is in a hospital or other health care facility.</u> An employee could also take leave to care for a parent or spouse of any age who is unable to care for his or her own basic hygienic or nutritional needs or safety. Examples include a parent or spouse whose daily living activities are impaired by such conditions as Alzheimer's disease, stroke, or clinical depression or who is recovering from major surgery or who is in the final stages of a terminal illness.
>
> <u>The phrase "to care for," in section 102(a)(1)(C), is intended to be read broadly to include both physical and psychological care.</u> Parents provide far greater psychological comfort and reassurance to a seriously ill child than others not so closely tied to the child. In some cases there is no one other than the child's parents to care for the child. The same is often true for adults caring for a seriously ill parent or spouse. <u>This language is also intended to assure employees the right to a period of leave to attend to a child's, spouse's, or parent's basic needs, both during periods of inpatient care and during periods of home care, when such child, spouse, or parent has a serious health condition.</u>

S. Rep. No. 103-3, at 24 (1993) (emphasis added).

The novel issue in dispute is whether an employee may take FMLA leave under 29 U.S.C. § 2612(a)(1)(C) to care for a spouse with a serious health condition who seeks to travel abroad for the purpose of faith-based healing. In <u>Marchisheck v. San Mateo</u>

---

[1] The discussion below refers to section 102(a)(1)(C) of the Family and Medical Leave Act of 1993. That section was codified at 29 U.S.C. § 2612.

County, the Ninth Circuit considered whether a mother was entitled to FMLA leave on the basis of the claim that she needed to "care for" her son by moving him from California to the Philippines in order to remove him from a physically dangerous environment.  199 F.3d 1068 (9th Cir. 1999).  After noting that the son did not see a doctor after moving to the Philippines, the Ninth Circuit held that taking the son to a foreign country did not amount to "caring for" him within the purposes of the FMLA.

> The relevant administrative rule, 29 C.F.R. § 825.116, suggests that "caring for" [a child] with a "serious health condition" involves some level of participation in ongoing treatment of that condition.  If . . . [her son] was suffering from a serious mental and physical condition, then Plaintiff could not "care for" him under the FMLA by removing him to a place where he would receive no treatment for either condition . . . .

Id. at 1076.  The Ninth Circuit subsequently held, "as a matter of law, providing care to a family member under the FMLA requires some actual care which did not occur here."  Tellis v. Alaska Airlines, Inc., 414 F.3d 1045, 1047 (9th Cir. 2005) (articulating requirement that employee be in "close and continuing proximity" to the ill family member) (emphasis added).

Courts have found that employees meet the criterion of providing "care for" a family member when they are directly involved in the process of providing psychological support for a spouse or parent.  See, e.g., Scamihorn v. General Truck Drivers, 282 F.3d 1078, 1087 (9th Cir. 2002) (plaintiff drove his father to counseling sessions, spoke with his father about his father's

grief, and may have been necessary to help his father meet basic needs); McGinnis v. Employer Health Servs., Inc., No. 05-2219-JTM, 2006 WL 1537387, at *8 (D. Kan. May 31, 2006) ("[P]laintiff's presence at the hospital during the treatment of her stepdaughter does provide a basis for finding that plaintiff provided psychological 'care' as defined in the DOL regulation.").

Plaintiff asserts that she provided care for her husband during their trip to the Philippines by assisting him with his basic needs, providing psychological comfort, carrying his luggage, pushing his wheelchair, and administering his medications. She contends that this was essential to his ability to travel. Without her, her ill husband could not have attended this pilgrimage, which he believed was important to alleviating his serious medical conditions. She claims that the pilgrimage treated the psychological aspect of her husband's serious medical condition.

Lahey responds that Plaintiff's trip to the Philippines cannot qualify as intended "to care for" her husband, since he sought "miraculous healing" as opposed to medicine. In support of its position, Lahey observes that Catholic priests are not identified as "health care providers" under the FMLA or the DOL

regulations.² See 29 U.S.C. § 2611(6); 60 Fed. Reg. at 2245 (codified at 29 C.F.R. § 825.118) (amended Jan. 16, 2009). Thus, because Mr. Tayag did not go to the Philippines in order to receive medical treatment, Lahey reasons that Plaintiff had no basis to take FMLA leave to accompany her husband on his trip.

It is far from clear that caring for a seriously ill spouse on a trip for non-medical religious purposes is a protected activity under the FMLA. Even if caring for a sick spouse on a trip for faith-healing were protected because of its potential psychological benefits, it is undisputed that nearly half of the Tayags' trip was spent visiting friends, family, and local churches. The FMLA does not permit employees to take time off to take a vacation with a seriously ill spouse, even if caring for the spouse is an "incidental consequence" of taking him on vacation. See Leakan v. Highland Cos., No. 96-CV-75445-DT, 1997 WL 33812215, at *4 (E.D. Mich. Nov. 19, 1997) ("[Plaintiff] simply was not absent from work 'in order to care for' her son, but, rather, she was absent in order to go on vacation."); see also Bhd. of Maint. of Way Employees v. CSX Transp., Inc., No. 03-9419, 2005 WL 3597700, at *6 (N.D. Ill. Dec. 28, 2005) ("[T]he FMLA provides for only four defined circumstances under which

---

² However, during the relevant time period, certain Christian Science practitioners were designated as health care providers. 60 Fed. Reg. at 2245 (codified at 29 C.F.R. § 825.118) (removed Jan. 16, 2009).

taking leave is appropriate, none of which include vacation or personal time."). Because nearly half of the Tayags' trip was spent visiting friends and family, Plaintiff's claim under the FMLA cannot survive. See Call v. Fresenius Medical Care Holdings, Inc., 534 F. Supp. 2d 184, 192 (D. Mass. 2008) ("Call's FMLA interference claim cannot survive if she does not show that she was actually entitled to FMLA leave on the dates she was absent because she needed to care for her daughter.").

For the same reason, Plaintiff's claim of unlawful retaliation under the FMLA fails as a matter of law. To establish a prima facie case of retaliation, an employee must prove that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 113-14 (1st Cir. 2006). Here, Plaintiff asserts that she engaged in activities protected by the FMLA by requesting leave to "care for" her husband and then taking leave. As explained above, however, Plaintiff was not entitled to leave under the FMLA. Therefore, Plaintiff did not engage in a "statutorily protected activity," and her retaliation claim must fail.

**C.   ADA Claim**

Plaintiff asserts that Lahey discriminated against her in violation of the ADA by requiring her to produce "unnecessary

-14-

medical verification" and "unlawfully depriv[ing her] of her right to leave" on account of her spouse's disability.  (Am. Compl. ¶ 84.)  Under the ADA, to state a claim of discrimination on the basis of an association with a disabled individual, a plaintiff must establish that: (1) she was "qualified" for the job at the time of the adverse employment action; (2) she was subjected to adverse employment action; (3) she was known by her employer at the time to have a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.  See <u>Den Hartog v. Wasatch Academy</u>, 129 F.3d 1076, 1085 (10th Cir. 1997).

Lahey asserts that Plaintiff provided inadequate medical certification to demonstrate that she needed to care for her husband as a result of his angioplasty.  According to Lahey, Plaintiff variously told her supervisors she wanted to take a vacation or that her husband was recovering from surgery (for his eye, hip or angioplasty).  In light of these inconsistencies, Lahey claims that it was reasonable to ask for additional medical certification since Plaintiff's previous requests involved "intermittent" leave of a day or two as opposed to a contiguous seven-week block of time.  Plaintiff retorts that she provided an adequate medical certification from her husband's primary care provider, who both wrote a letter and sent a certification before

-15-

her departure.  While Plaintiff contends this certification was adequate for the requested leave, she does not appear to dispute that she told Lahey that she needed to take care of her husband as a result of surgery and never told Lahey about the faith-healing.

Plaintiff claims that Lahey violated the ADA by requiring her to produce "unnecessary medical verification" of her husband's condition.  Being asked to produce additional paperwork, even if the request was unreasonable, does not constitute "adverse employment action" under the ADA.  See Henriquez v. Times Herald Record, No. 96-6176, 1997 WL 732444, at *6 (S.D.N.Y. Nov. 25, 1997) (allegations that Plaintiff was required to provide medical documentation during a leave of absence "simply do not fall . . . within the types of tangible employment actions that courts have found to be materially adverse.").  Cf. Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999).

With respect to her termination, which of course is an adverse employment action, Lahey argues that Plaintiff was not qualified for her position because she took an unapproved leave of absence.  Tayag responds that her absence was excused because she left work in order to exercise her rights under the FMLA.  As Tayag puts it, "if the Court rules that the absences [sic] was protected under the FMLA, then the Plaintiff was qualified for her position."  (Pl.'s Opp. To Def.'s Mot. For Summ. J. 17.)  The

issue of whether Lahey had the right to request FMLA recertifications therefore falls to the side: since Tayag's absence was not protected under the FMLA because it was a vacation, Plaintiff had no right to take the absences she took, and therefore Lahey was within its rights to terminate her for taking those absences.  Since she failed to come to work and was not entitled to miss work under the FMLA, Tayag was not qualified for her position.

Courts have concluded that employees who violate neutral employer policies are not qualified for their jobs and thus cannot prevail on "associational" ADA claims.  See Den Hartog, 129 F.3d at 1083 ("If [a non-disabled employee] violates a neutral employer policy concerning attendance or tardiness, he or she may be dismissed even if the reason for the absence or tardiness is to care for the [disabled associate].") (quoting H.R. Rep. No. 101-485, pt. 2, at 61-62 (1990)).  Since Plaintiff was fired for her unexcused absence – and had no right under the FMLA to that absence – her ADA claim is dismissed.

**D.     Title VII and Mass. Gen. Laws Claims**

Plaintiff also asserts that Lahey discriminated against her on the basis of her race, religion, and national origin in violation of Title VII of the Civil Rights Act of 1964 and Massachusetts General Laws ch. 151B.  Specifically, Plaintiff alleges that Lahey's request for additional documentation of her

husband's condition was "a pretext for discrimination," as was Lahey's "articulated reason for Plaintiff's termination." (Am. Compl. ¶¶ 77-79.)  Because Plaintiff failed to exhaust required administrative remedies relating to these claims, Lahey is entitled to summary judgment.

To effectuate the broad remedial purposes of the Massachusetts anti-discrimination statute, Mass. Gen. Laws ch. 151B requires a plaintiff to file an administrative complaint with the Massachusetts Commission Against Discrimination ("MCAD"). Mass. Gen. Laws ch. 151B, § 5. Title VII of the Civil Rights Act requires the same. 42 U.S.C. § 2000e-5(e). The purpose of the administrative filing is "(1) to provide the MCAD with an opportunity to investigate and conciliate the claim of discrimination; and (2) to provide notice to the defendant of potential liability." Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 531, 750 N.E.2d 928, 936 (2001). In addition, "the requisite degree of precision in the drafting of an MCAD complaint is satisfied if the core factual allegations underlying the claim are set forth such as to fairly place the issue before the agency." Windross v. Vill. Auto. Group, Inc., 71 Mass. App. Ct. 861, 866, 887 N.E.2d 303, 309 (Mass. App. Ct. 2008) (internal punctuation and citation omitted). Without a predicate filing, a court has no jurisdiction to entertain the claim of discrimination. See Everett v. 357 Corp., 453 Mass. 585, 600-601, 904 N.E.2d 733, 746-47 (2009) (151B); Nat'l R.R. Passenger

Corp v. Morgan, 536 U.S. 101, 110 (2002) (Title VII).

Plaintiff filed a charge of discrimination with the MCAD, and therefore with the EEOC pursuant to the agencies' work-sharing agreement. However, the MCAD charge only alleges discrimination on the basis of "Disability." (Lewis Aff. Ex. J.) Plaintiff's claims of discrimination on the basis of factors other than disability were never subjected to administrative scrutiny, and cannot be alleged for the first time in this Court. Based on her failure to exhaust administrative remedies, Plaintiff's final set of discrimination claims must fail.

**E.     Breach of Contract**

Finally, Plaintiff alleges that Lahey breached its "implied employment contract with Mrs. Tayag by failing to provide her with medical leave in accordance with its own policies as stated in [Lahey's] employee handbook." (Am. Comp. ¶ 68.) Plaintiff does not provide any evidence (such as the employee handbook in question) to support a breach of contract claim, apart from the underlying FMLA claim.

**IV.     ORDER**

Defendant Lahey's Motion for Summary Judgment is **ALLOWED**, and Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

/s/ Patti B. Saris

PATTI B. SARIS
United States District Judge